# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

**REBECCA L. TILTON,**

                Plaintiff,

v.

**MICHAEL J. ASTRUE**, Commissioner
of Social Security,

                Defendant.

Case No. 6:10-CV-1151-SI

**OPINION AND ORDER**

MERRILL SCHNEIDER
Schneider Law Offices
PO Box 14490
Portland, OR 97293

        Of Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

FRANCO L. BECIA
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Of Attorneys for Defendant

**SIMON, District Judge.**

Rebecca L. Tilton ("Ms. Tilton") brings this action under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income (SSI). This court has jurisdiction under 42 U.S.C. § 405(g).

Ms. Tilton contends that the Commissioner's decision failed to consider evidence provided by her mother and a social worker, erroneously disregarded an examining physician's functional assessment, and improperly discredited much of her testimony. The court agrees. The Commissioner's decision failed to address the evidence and testimony Ms. Tilton identifies in the manner prescribed by Social Security regulations and Ninth Circuit Court of Appeals case law. Consequently, the court reverses the decision of the Commissioner and remands the case for further proceedings consistent with this decision.

## I. BACKGROUND

On March 6, 2008, Ms. Tilton filed an application for SSI, alleging disability since June 1, 2006. Tr. 97-103. Ms. Tilton, who was 22 at the time she filed her application, last worked in October 2006 as a medical office assistant, and she reported previously working as a cashier and package handler. Tr. 36, 115. The Commissioner denied Ms. Tilton's application, both initially and on reconsideration. Tr. 59-65. Ms. Tilton then requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 69-70. ALJ Mark R. Dawson held a hearing on October 7, 2009. Tr. 35-50. He denied her claim in a written decision on December 15, 2009. Tr. 13-27. The Appeals Council declined Ms. Tilton's request for review and adopted the ALJ's decision as the final decision of the Commissioner on June 22, 2010. Tr. 1-3. Ms. Tilton sought review in this court.

Ms. Tilton alleges that she suffers from chronic pain, difficulty walking, anxiety, and severe depression. Tr. 37. To establish that she is disabled and eligible for benefits, Ms. Tilton "must produce complete and detailed objective medical reports of her condition from licensed medical professionals." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R. § 416.913(a). She may "use evidence from other sources to show the severity of [her] impairment(s) and how it affects [her] ability to work." 20 C.F.R. § 416.913(d).

## A.    Medical Evidence of Impairment

Ms. Tilton produced reports from three doctors, as wells as the results of two MRIs, two x-rays, and an ultrasound. Collectively, the medical evidence demonstrates that Ms. Tilton is diabetic, suffers from mild spinal disfiguration, and has reported a history of chronic pain, depression, and anxiety.

### 1.    MRIs, x-rays, and ultrasound

The first MRI, conducted in December 2007, showed "[d]iffuse bulging of L3-L4 dis[c] with mild rightward lateralization" and "[m]ild central fullness or bulging of L5-S1 dis[c]s; no dis[c] herniation, central spinal canal stenosis, or obvious mechanical neural impingment." Tr. 286. Dr. Yin Kan Hwee noted that it showed "no impingement or spinal canal stenosis." Tr. 434. The second lumbar MRI, conducted on June 18, 2008, revealed "[n]o acute process or change from [the] previous" MRI. Tr. 533.

On the same day, Ms. Tilton also had a lumbar spine x-ray. Dr. Sean Fell wrote that the x-ray showed "[m]inimal narrowing at the L5-S1 level" and was "otherwise unremarkable." Tr. 534. Dr. James McAffee reviewed a second lumbar spine x-ray taken on August 9, 2009. He noted some spinal curvature, but saw "[n]o acute findings." Tr. 473. A pelvic ultrasound

conducted in April 2009 revealed a small cyst in the right ovary but was otherwise "unremarkable." Tr. 492.

### 2.    Dr. Belshee-Storlie

Dr. Debra Belshee-Storlie examined Ms. Tilton for a psychological diagnostic evaluation on November 11, 2007. Tr. 221. Ms. Tilton reported to Dr. Belshee-Storlie that "she has been depressed for the last year and it has become worse." Tr. 221. In particular, she described stress relating to the care of her disabled daughter. Tr. 221-22.

Ms. Tilton reported to Dr. Belshee-Storlie that she performs many activities of daily living, including taking her mother to and from work, dressing and preparing her daughter for school, cooking, cleaning house, grocery shopping, attending a church group, and using a computer. Tr. 226-27. She indicated that she could sit at a desk but that "it is standing or walking that hurts." Tr. 227. Dr. Belshee-Storlie noted that Ms. Tilton "feels that she should receive assistance from the State and shouldn't be required to work so she can take care of her disabled daughter[.]" Tr. 228.

Dr. Belshee-Storlie diagnosed Ms. Tilton with adjustment disorder with mixed anxiety and depressed mood. Tr. 228. She noted that Ms. Tilton "appears to have depression and anxiety related to her daughter's disability, and her pain is likely made worse by her psychological problems dealing with it[.]" Tr. 228. Dr. Belshee-Storlie also stated that "[i]t is likely that a job away from her daughter would be fulfilling and good for her" and found that her "[p]rognosis ... is fair to good." Tr. 228-29.

3.      **Dr. Carter**

Dr. Jamie Carter performed a psychological diagnostic evaluation of Ms. Tilton on April 23, 2008. Tr. 342. Ms. Tilton told Dr. Carter that "she cannot work due to the issues she is dealing with as well as her daughter being autistic and on SSI and requiring twenty[-]four hour care." Tr. 342. Ms. Tilton was not receiving mental health treatment at the time of the examination, but indicated that she planned to "start seeing someone" the next day. Tr. 342.

Ms. Tilton reported a range of symptoms to Dr. Carter, including loss of appetite, nervousness, and feelings of hopelessness and worthlessness:

> [Ms. Tilton's] sleep is disturbed due to pain and because her mind races. She gets two hours on a good night. Her appetite is poor. . . . She does not have a lot of energy. She cries three or four times a day. She sometimes feels hopeless or worthless. . . . [S]he is unsure whether or not she has anxiety. . . . If she is in a crowd of people she becomes nervous or has to hide. . . . When she goes to church, she sits in the back. Tr. 342.

Ms. Tilton told Dr. Carter that these "symptoms only developed three months ago and she never had them previously." Tr. 342-43. Ms. Tilton stated that she performed a variety of activities of daily living, such as doing laundry, cleaning, preparing meals, and attending church. Tr. 345. She also did volunteer work for a welfare organization. Tr. 345.

Dr. Carter diagnosed Ms. Tilton with posttraumatic stress disorder and possibly panic disorder with agoraphobia. Tr. 345-46. In addition, Dr. Carter noted that "[i]t appears likely that [Ms. Tilton] has dysthymic disorder with a current episode of major depression" and that she "meets the criteria for PTSD[.]" Tr. 346. Dr. Carter concluded that her prognosis was "[f]air to [g]ood if she receives treatment." Tr. 346.

### 4.    Dr. Hwee

Dr. Yin Kan Hwee examined Ms. Tilton on October 4, 2008. Tr. 434. According to Dr. Hwee, Ms. Tilton's chief complaints were "pain 'all over'" and depression. Tr. 434. Ms. Tilton also reported "chronic headaches, which she has learned to live with" and "diabetes that is not well controlled." Tr. 435.

Ms. Tilton described to Dr. Hwee pain in her lower extremities and knees beginning one year prior to the examination. Tr. 434. The pain "began to migrate up to her thigh, then to her back and arms, and now she reports that she has constant pain throughout her entire body." Tr. 434. Ms. Tilton asserted that her symptoms limited her activities of daily living. For example, she claimed that the "only thing that she is able to do before getting exhausted and getting back to resting is to get her daughter out of bed and get her out the door to the bus to her school." Tr. 435.  She reported taking tramadol and ibuprofen to control her pain. Tr. 434-35.

Ms. Tilton claimed to have "been depressed since about 14 years old." Tr. 435. More recently, however, Ms. Tilton stated that "this year she has restarted on her antidepressants and she feels that she is better now." Tr. 435. Dr. Hwee observed that the depression "appears well controlled" and "on exam today [Ms. Tilton] appeared appropriate and conversant without any suicidal ideation or any labile emotion." Tr. 438-39.

Based on his examination, Dr. Hwee diagnosed chronic lower back, shoulder, and leg pain. Tr. 438. But, he found that Ms. Tilton "does not have the classic findings of trigger points as seen in fibromyalgia." Tr. 438. He noted a history of depression, but concluded that "she does not reveal any emotional instability." Tr. 438. He observed some limitations in Ms. Tilton's range of motion due to obesity and complaints of pain. Tr. 437. Dr. Hwee found that Ms. Tilton

could be expected to stand and walk for four hours of an eight-hour workday. Tr. 438. And, Dr. Hwee found that she could sit for six hours of an eight-hour workday, "provided that she is able to shift and change positions frequently." Tr. 439.

**B.      Other Evidence of Impairment**

Ms. Tilton testified at the hearing. She also produced a third-party function report prepared by her mother, Lucille Walker, and a letter from a social worker, Gayle Dukart-Hardy.

**1.      Ms. Tilton's testimony.**

At the hearing, Ms. Titlon explained that she suffered from "constant pain," fibromyalgia, diabetes, social anxiety, depression, and "permanent nerve damage" in her left wrist. Tr. 37- 42, 45. She described "constant pain" in her lower back and legs, including sciatica in her right leg. Tr. 37. Ms. Tilton noted that "some of my doctors say that . . . I have [fibromyalgia]; and some don't." Tr. 39. According to Ms. Tilton, her "constant pain everywhere . . . affects the fibromyalgia and makes it worse so that it's hard for me to do too much physically." Tr. 39.

Nonetheless, Ms. Tilton reported that she "walk[s] all . . . the time. . . . I'm constantly walking, but I'm constantly in pain, too." Tr. 39. She added that she walks slowly and that she sometimes has to stop and take a break. Tr. 39-40. Other than pain and slow walking, Ms. Tilton testified that fibromyalgia did not cause her any other problems. Tr. 40. She is able to drive, shop, cook, and run errands. Tr. 46-47. Ms. Tilton outlined some physical limitations: she cannot bend over or crouch down, she can sit for a maximum of thirty to forty-minutes at a time, and she lays down for "an hour or two" every day. Tr. 43-44.

Page 7 - OPINION AND ORDER

In addition to pain, Ms. Titlton described stress and anxiety when in the presence of "a lot of people": "I can't be around a lot of people, a lot of noise. I get really anxious and start crying[.]" Tr. 41. She estimated that six or seven people in a small room or ten in a larger room would cause her to become anxious. Tr. 41-42. At the time of the hearing, she was not seeing a therapist, but indicated that she planned to start. Tr. 42.

### 2. Walker's third-party function report

Lucille Walker, Ms. Tilton's mother, submitted a third-party function report in April 2008. Tr. 156-163. Walker explained that if Ms. Tilton "could get a job, she would, but due to her c[h]ronic pain, she wouldn't be useful in any position." Tr. 163. According to Walker, Ms. Tilton "has a hard time walking," and "claims that she doesn't sleep more than 2 hours each night due to pain." Tr. 157. Walker noted that Ms. Tilton "cooks full meals almost every night unless she is in a lot of pain," does laundry, drives, goes shopping, uses the computer, and attends church. Tr. 158-60. However, "she doesn't do much cleaning because of pain" and rarely sees friends. Tr. 158, 161.

### 3. Dukart-Hardy's letter

Gayle Dukart-Hardy, a licensed social worker, met with Ms. Tilton in April and May of 2008. Tr. 413. According to Dukart-Hardy, "it does not appear that Ms. Tilton would be able to perform work-related activities on a sustained basis due to her lack of social skills, chronic pain and current emotional state." Tr. 413. Dukart-Hardy noted, however, that she had "limited interactions" with Ms. Tilton and that Ms. Tilton "did not follow through with additional scheduled appointments." Tr. 413.

C.     **The ALJ's Decision**

The ALJ applied the five-step sequential disability determination process set forth in 20 C.F.R. § 416.920. Under the five-step process, if the ALJ finds that a claimant is or is not disabled at any particular step, the analysis concludes and a determination is made. If, however, the ALJ cannot conclude whether the claimant is disabled at any given step, then the ALJ proceeds to the next step. In steps one through four, the burden of proof rests upon the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

The first step of the five-step sequential disability determination process considers a claimant's work activity. If a claimant is "doing substantial gainful activity," the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Ms. Tilton satisfied step one. Tr. 18.

The second step of the disability determination considers the medical severity and duration of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). At step two, the ALJ found that Ms. Tilton suffered from several severe impairments: morbid obesity, diabetes, "depressive / anxiety disorder," "lumbar strain / sprain," and fibromyalgia. Tr. 18.

The third step also considers the medical severity of the impairments and asks whether the impairments meet or equal one or more of the listings set forth in Appendix 1 to subpart P of part 404. 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairments meet or equal one of the listed impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). The ALJ found that Ms. Tilton did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments[.]" Tr. 18.

The fourth step considers the ALJ's assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. The ALJ found that Ms. Tilton retained an RFC to perform light work, except that she could not perform work requiring either extended periods of concentration or significant social interaction. Tr. 20. If a claimant can still perform the her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ found that Ms. Tilton had no past relevant work. Tr. 26.

In developing his formulation of Ms. Tilton's RFC, the ALJ rejected much of her testimony: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of [her pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 22. In addition, the ALJ's decision does not address Walker's third-party function report or Dukart-Hardy's letter.

The fifth and final step considers the ALJ's assessment of the claimant's RFC and determines whether, in light of the claimant's age, education, and work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). At this stage of the analysis, the burden shifts to the Commissioner to establish that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Terry*, 903 F.2d at 1275.

One way in which the ALJ may meet the step-five burden is to rely on the testimony of a vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Typically, the ALJ asks the VE whether, given certain hypothetical assumptions about the claimant's capabilities, "the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.3 (9th Cir. 1988). In

response, the "VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock*, 240 F.3d at 1162-63.

Here, the ALJ posed two different hypothetical functional capacities to the VE. In the first hypothetical,

> the claimant could perform a limited range of light work, and with the following limitations: first, a moderate limitation in ability to concentrate, such that the claimant could not perform work where concentration for extended periods of time without at least a brief opportunity to pause . . . would have to be permitted to her; and secondly, a moderate limitation in ability to socially function in an appropriate manner, such that the claimant could not perform work for which significant social interaction was a primary job requirement. Tr. 48.

The VE identified three potential jobs in the national economy that a claimant could perform under these hypothetical limitations: a produce sorter, a paper sorter recycler, and a cafeteria attendant. Tr. 49. In the second hypothetical, the ALJ asked the VE to consider a claimant who was unable "to meet production or work standards for at least one-half of an eight-hour workday." Tr. 49. In response, the VE testified that a claimant with those hypothetical limitations "would not be able to sustain employment." Tr. 49.

In his decision, the ALJ rejected the second set of hypothetical limitations he posed to the VE. Instead, he relied on his first hypothetical and the VE's response to find that Ms. Tilton "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 27. Accordingly, the ALJ determined that Ms. Tilton was not disabled.

## II. STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d

498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

### III. DISCUSSION

In her complaint to this court, Ms. Tilton makes four arguments: (1) the ALJ failed to evaluate the third-party statement provided by Walker; (2) the ALJ improperly assessed the medical opinions; (3) the ALJ failed to evaluate a letter submitted by Dukart-Hardy; and (4) the ALJ failed to provide clear and convincing reasons to reject Ms. Tilton's testimony. The court finds that the ALJ's decision failed to evaluate both the Walker and Dukart-Hardy evidence, failed to consider a portion of Dr. Hwee's medical opinion, and improperly discredited Ms. Tilton's testimony.

### A.    Walker and Dukart-Hardy Evidence.

Ms. Tilton argues first that the ALJ "erred in failing to give any reason for rejecting [the] third[-]party function report" submitted by her mother, Lucille Walker. Pl.'s Br. 7. She also argues that the ALJ "erred by failing to mention and discuss" a letter submitted by social worker Gayle Dukart-Hardy. Pl.'s Br. 12. Social Security regulations require the ALJ to consider all relevant evidence. 20 C.F.R. § 416.945(a)(3). The court concludes that the ALJ erred in failing to discuss Walker's report and Dukart-Hardy's letter.

The regulations "distinguish[] between those opinions coming from 'acceptable medical sources' and those coming from 'other sources.'" *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996), *cert. denied*, 519 U.S. 881 (1996); 20 C.F.R. § 416.913(a),(e). Family members, such as Walker, and social workers, such as Dukart-Hardy, are considered "other sources" under the regulations. 20 C.F.R. § 416.913(d)(3)-(4); *see also Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social workers are not considered "acceptable medical source" but are "other sources" under the regulations). The regulations permit "the Commissioner to accord opinions from other sources less weight than opinions from acceptable medical sources." *Gomez*, 74 F.3d at 970-71.

Nonetheless, even though testimony from "other sources" may be accorded less weight, it may not be dismissed without comment. An ALJ "must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. § 416.913(d). Family members "in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). An ALJ may not disregard lay witness testimony "unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ's decision does not mention either Walker's third-party function report or Dukart-Hardy's letter. Both Walker's report and Dukart-Hardy's letter discuss Ms. Tilton's symptoms as they relate to her ability to work. Walker's report contains her observations about how Ms. Tilton's pain limits her ability to walk and complete common activities of daily living. Tr. 156-61. Dukart-Hardy's letter notes that Ms. Tilton's conditions could significantly limit her

ability to complete "work activities." Tr. 413. Lay witness evidence discussing a claimant's symptoms is competent evidence, *Lewis*, 236 F.3d at 511, and "therefore *cannot* be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original). The ALJ erred in failing to mention, much less evaluate, the Walker and Dukart-Hardy evidence.

Nevertheless, the Commissioner argues that the error was harmless. Def.'s Br. 17. The standard for evaluating whether failure to discuss lay witness testimony is harmless is set out in *Stout*, 454 F.3d at 1056: "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

The court cannot confidently conclude that no reasonable ALJ could have reached a different conclusion had the lay witness testimony been fully credited. Dukart-Hardy's letter stated that Ms. Tilton was unable to "perform work-related activities on a sustained basis[.]" Tr. 413. In addition, Walker noted that Ms. Tilton had severe difficulty walking. Tr. 157, 161. The ALJ included neither Dukart-Hardy nor Walker's characterization of Ms. Tilton's limitations in the first hypothetical question that he posed to the VE. Tr. 48. Presented with a different set of limitations, the VE may have reached a different conclusion. Had Dukart-Hardy and Walker's testimony been fully credited, a reasonable ALJ could have reached a different conclusion. Thus, the error was not harmless.

**B.    Assessment of Medical Evidence**

Ms. Tilton next argues that "the ALJ failed to give a valid RFC that adequately considers

all of Ms. Tilton's impairments and reflects the medical opinions of record." Pl.'s Br. 8. She

identifies one error in particular: The ALJ did not incorporate Dr. Hwee's functional assessment

into the hypothetical questions he posed to the VE. Pl.'s Br. 10. While Dr. Hwee concluded that

Ms. Tilton could stand or walk for only four hours of an eight-hour work day, the ALJ asked the

VE to consider a hypothetical claimant capable of "light work," a designation that requires up to

six hours of standing or walking during an eight-hour work day. Tr. 48. The court agrees that the

ALJ erred. The ALJ could have included the limitations described in Dr. Hwee's functional

assessment in the hypothetical questions he posed to the VE. Alternatively, the ALJ could have

provided clear and convincing reasons to reject Dr. Hwee's assessment. But the ALJ did neither.

**1.    Standards for assessing medical evidence**

An ALJ may rely on a VE to determine whether a claimant retains the ability to perform

other work. *Osenbrock*, 240 F.3d at 1162. "Hypothetical questions asked of the vocational expert

must 'set out all of the claimant's impairments.'" *Lewis*, 236 F.3d at 517 (quoting *Gamer v.*

*Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). In the event that an

ALJ's hypothetical question fails to account for all the claimant's impairments, the "opinion of

the vocational expert that claimant has a residual working capacity has no evidentiary value."

*Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

An ALJ, however, may accord less weight to or disregard medical opinions in certain

circumstances. *See* 20 C.F.R. § 416.927. In the event that an ALJ decides to reject the

uncontradicted opinion of an examining physician, he or she "must provide 'clear and

convincing' reasons" for doing so. *Lester v. Charter*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting

*Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

### 2.    Dr. Hwee's medical opinion

The regulations set out five categories of work: very heavy, heavy, medium, light, and

sedentary. 20 C.F.R. § 416.967. In the first hypothetical question he posed to the VE, the ALJ

asked the VE to consider a claimant who could "perform a limited range of light work[.]" Tr. 48.

A job is "light work" when "it requires a good deal of walking or standing, or when it involves

sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R.

§ 416.967(b). In Social Security Ruling ("SSR") 83-10,[1] the Commissioner clarified that "the

full range of light work requires standing or walking, off and on, for a total of approximately 6

hours of an 8-hour workday. Sitting may occur intermittently during the remaining time."

Dr. Hwee, however, concluded that Ms. Tilton "could be expected to stand and walk" for

only four hours of an eight-hour workday. Tr. 438. While the ALJ noted this restriction in his

decision, Tr. 25, he did not include it in either hypothetical question that he posed to the VE.[2]

Tr. 48-49. The ALJ's decision does not state whether or not the ALJ accepted Dr. Hwee's

conclusion. Either way, the result was error.

If the ALJ accepted Dr. Hwee's conclusion, he erred by failing to include Dr. Hwee's

assessment in the hypothetical questions he posed to the VE. In the absence of an explicit

---

[1]     The Commissioner publishes rulings to clarify the Social Security
Administration's regulations and policy. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir.
1991) (*en banc*). Although they do not carry the force of law, SSRs are binding on ALJs. *Bray v.
Comm'r*, 554 F.3d 1219, 1224 (9th Cir. 2009).

[2]     The ALJ made two unrelated limitations to his description of "light work" in the
first hypothetical: The claimant could not perform jobs that required either extended periods of
concentration or significant social interaction. Tr. 48.

limitation, the ALJ's characterization of a hypothetical claimant's capacity to perform "light work" suggested that the claimant – Ms. Tilton – could stand or walk for six hours of an eight-hour day. That suggestion was inconsistent with Dr. Hwee's assessment of Ms. Tilton's limitations. If the hypothetical fails to correctly set out the claimant's limitations, the VE's response has no evidentiary value: "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.1991)).

If, on the other had, the ALJ rejected Dr. Hwee's conclusion, he erred by failing to state clear and convincing reasons for doing do. Dr. Hwee's conclusion was not contradicted by any other medical source. Thus, if the ALJ intended to disregard it, he was required to provide clear and convincing reasons for doing so. *Lester*, 81 F.3d at 830. But, the ALJ's decision did not reject Dr. Hwee's conclusion. Instead, it included only a general finding that "those conclusions of the acceptable medical sources that are supported by objective assessment and which are consistent with both the predominance of the medical evidence of record and the residual functional capacity are afforded great weight." Tr. 26.

The ALJ's general finding is insufficient to discount Dr. Hwee's conclusion that Ms. Tilton could stand for only four hours of an eight-hour workday. In his description of Dr. Hwee's report, the ALJ gave no indication that he did not accept its conclusion. The general finding, which comes later in the decision, does not specifically mention Dr. Hwee. The Ninth Circuit's cases are unequivocal in stating that an ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of an examining physician. *See Bayliss v. Barnhart*, 427

Page 17 - OPINION AND ORDER

F.3d 1211, 1216 (9th Cir. 2005) ("To reject an uncontradicted opinion of a treating or examining

doctor, an ALJ must state clear and convincing reasons that are supported by substantial

evidence."); *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (same).

The ALJ's decision failed to account for Dr. Hwee's functional assessment. On remand,

the ALJ should either ask a VE to consider what work a hypothetical claimant whose limitations

are consistent with Dr. Hwee's functional assessment could perform, or set forth clear and

convincing reasons for discounting that assessment.

**C.      Ms. Tilton's Credibility**

Finally, Ms. Tilton argues that the ALJ "did not credit her statements of disability as

true" and "did not provide clear and convincing reasons for not finding [her] credible[.]" Pl.'s

Br. 14. Ms. Tilton identifies four areas of her testimony that she suggests the ALJ improperly

discredited: (1) her experience of "constant pain"; (2) the permanent nerve damage in her wrist;

(3) her social anxiety; and (4) her need to lay down and rest at least once a day. Pl.'s Br. 13. The

ALJ's decision, however, did not directly address the credibility of these, or any other discrete

portion of Ms. Tilton's testimony. Instead, the ALJ made a blanket credibility finding:

Ms. Tilton's "statements concerning the intensity, persistence and limiting effects of [her]

symptoms are not credible to the extent they are inconsistent with the above residual functional

capacity assessment." Tr. 22. The court concludes that the ALJ erred in failing specifically to

identify what portions of Ms. Tilton's testimony he rejected and in failing to provide specific,

clear, and convincing reasons for discrediting her testimony.

1.    **Credibility standards**

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting affect of her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Further, the ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81 F.3d at 834.

Both the Social Security Administration and the Ninth Circuit have set forth a variety of tools that an ALJ may use to assess a claimant's credibility. In SSR 96-7p,[3] the Commissioner recommended assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms.

In addition to the factors identified in SSR 96-7p, the Ninth Circuit has suggested that an ALJ "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284.

### 2.    Ms. Tilton's credibility

The ALJ found that Ms. Tilton met the first step of the credibility analysis: Ms. Tilton's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 22. Nevertheless, the ALJ rejected all of Ms. Tilton's testimony that was inconsistent with his formulations of her RFC: Ms. Tilton's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 22. In light of the

---

[3]    The Commissioner published SSR 96-7p in part "to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."

ALJ's finding that Ms. Tilton's impairments could reasonably be expected to cause the pain and other symptoms she alleged, the ALJ was required to identify the specific portions of her testimony that he discredited and to state specific, clear, and convincing reasons for doing so.

The ALJ's decision did neither. The blanket finding quoted above is the only sentence in the decision that directly addresses Ms. Tilton's credibility.[4] The ALJ's statement fails specifically to identify, as required by this Circuit's case law, what portions of Ms. Tilton's testimony the ALJ found not to be credible. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (ALJ must "specifically identify the testimony she or he finds not to be credible"). Moreover, neither the finding in particular, nor the decision as a whole, states specific, clear, and convincing reasons for discrediting Ms. Tilton's testimony. In fact, the finding appears to be a form statement used repeatedly in decisions issued by the Commissioner.[5] While such a statement may be appropriate to introduce a discussion of the claimant's credibility, it cannot, on its own, replace the careful analysis required by SSR 96-7p and this Circuit's case law.

The Commissioner, in his brief to the court, responds that the ALJ's summary of the evidence undermines Ms. Tilton's credibility. Def.'s Br. 6. The Commissioner may be correct that some evidence, recited by the ALJ, could be used to dispute Ms. Tilton's testimony. The ALJ, however, did not apply the evidence he summarized to an analysis of Ms. Tilton's

---

[4]    In discussing Ms. Tilton's function report, which Ms. Tilton completed in April 2008, the ALJ noted that Ms. Tilton "did not list problems with being in public or amid noise, as she alleged considerable problems with in hearing testimony." Tr. 22. The ALJ did not identify that discrepancy as a reason to cast doubt on Ms. Tilton's credibility. In fact, the ALJ indicated that Ms. Tilton's function report "comments were fairly consistent with her testimony." Tr. 22.

[5]    A Westlaw search revealed nearly 60 district court cases in this Circuit, and more than 250 nationwide, quoting substantially similar language taken from disability decisions issued by the Commissioner.

Page 21 - OPINION AND ORDER

credibility. Recitation of evidence is not a substitute for careful evaluation of credibility: SSR 96-7p makes plain that the "decision must contain specific reasons for the finding on credibility." Conclusory statements, such as the ALJ's blanket finding in this case, are insufficient:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 96-7p.

In any event, the Commissioner's arguments to the court contesting Ms. Tilton's credibility cannot cure the absence of an express credibility analysis in the ALJ's decision. The court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision[.]" *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Where, as here, "the ALJ did not assert specific facts or reasons to reject [the claimant's] testimony," the court must reverse the ALJ's decision. *Connett*, 340 F.3d at 874.

Ms. Tilton testified to constant pain that limited her ability to walk and required her to lay down for an hour or more every day. The ALJ made a blanket finding discrediting Ms. Tilton's testimony. That finding, however, failed both to identify what testimony the ALJ discredited and to state specific, clear, and convincing reasons for doing so. A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc*). The court concludes that the ALJ erroneously discredited Ms. Tilton's testimony.

**D.    Remand**

The court may, in its discretion, remand a case to the Commissioner for immediate

payment of benefits: In "Social Security Act cases Congress has granted district courts the

additional power to reverse or modify an administrative decision without remanding the case for

further proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000), *cert. denied*,

531 U.S. 1038 (2000). The Ninth Circuit has set forth a three-part test for determining whether to

remand a case for further proceedings or to order an immediate award of benefits. Immediate

payment of benefits is appropriate where (1) the ALJ failed to provide legally sufficient reasons

for rejecting the claimant's testimony; (2) no outstanding issues remain for the ALJ to resolve;

and (3) it is clear from the record that the ALJ would be required to find the claimant disabled

were such testimony credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

While the ALJ failed to articulate legally sufficient reasons for rejecting Ms. Tilton's

testimony, it is unclear whether a finding of disability would be required had Ms. Tilton's

testimony been credited as true. Neither the ALJ nor Ms. Tilton's counsel asked the VE to

consider a hypothetical claimant facing the limitations Ms. Tilton described. The evidence,

therefore, does not "clearly indicate the proper outcome of steps four and five of the disability

determination evaluation." *Vasquez*, 572 F.3d at 597. For this reason, the court cannot find

Ms. Tilton "disabled and order an immediate payment of benefits." *Id.*; *see also Harman*, 211

F.3d at 1180 ("In cases where the testimony of the vocational expert has failed to address a

claimant's limitations as established by improperly discredited evidence, we consistently have

remanded for further proceedings rather than payment of benefits."). Thus, the court concludes

that the case should be remanded for further proceedings so that the Commissioner may consider Walker's report, Dukart-Hardy's letter, Dr. Hwee's assessment, and Ms. Tilton's credibility.

## IV. CONCLUSION

The Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings.

IT IS SO ORDERED.

Dated this ___20___ day of September, 2011

Michael H. Simon
United States District Judge